# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:        2023AP645-CR

†Petition for Review filed

Complete Title of Case:


**STATE OF WISCONSIN,**

        **PLAINTIFF-RESPONDENT,**

    **V.**

    **CARL LEE MCADORY,**

        **DEFENDANT-APPELLANT.†**


| | |
|---|---|
| Opinion Filed: | April 11, 2024 |
| Submitted on Briefs: | January 18, 2024 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Blanchard, Graham, and Nashold, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Brent A. Simerson* of *Simerson Law LLC*, Wauwatosa. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *John W. Kellis*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |

# COURT OF APPEALS
## DECISION
## DATED AND FILED

### April 11, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP645-CR**

Cir. Ct. No. **2016CF26**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

CARL LEE MCADORY,

   DEFENDANT-APPELLANT.

---

APPEAL from judgments and an order of the circuit court for Rock County: KARL HANSON, Judge. *Affirmed*.

Before Blanchard, Graham, and Nashold, JJ.

¶1    BLANCHARD, J.   This appeal involves the proper interpretation and application of WIS. STAT. § 346.63(1)(c) (2021-22), which we call "the single-

conviction provision."[1]  Under the single-conviction provision, a prosecutor may, in one trial, pursue multiple counts that arise out of the same incident and that charge one of the three categories of offenses defined in § 346.63(1), which prohibits operating a motor vehicle under the influence of an intoxicant or other drug.  The single-conviction provision further requires, however, that when that happens and the defendant is found guilty of more than one § 346.63(1) offense "there shall be a single conviction for purposes of sentencing and for purposes of counting convictions."  *See* § 346.63(1)(c).

¶2      A jury found Carl McAdory guilty of two WIS. STAT. § 346.63(1) offenses for acts arising out of the same incident:  (1) operating a motor vehicle while under the influence of one or more controlled substances (the "OWI" offense); and (2) operating a motor vehicle with a restricted controlled substance (the "RCS" offense).[2]  Based on the single-conviction provision, the State moved the trial court to enter a conviction and to sentence McAdory on the OWI count and to dismiss the RCS count.  The trial court granted this motion.

¶3      McAdory appealed the OWI conviction in part on the ground that his right to due process of law on the OWI count was violated at trial.  *See State v. McAdory*, 2021 WI App 89, ¶2, 400 Wis. 2d 215, 968 N.W.2d 770.  We granted the only relief that he sought based on his due-process argument:  reversal of the OWI conviction and remand for a new trial on the OWI count.  *See id.*, ¶71.  Our opinion

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] In referring to the three categories of vehicle-operation offenses defined in WIS. STAT. § 346.63(1), we use the following terms:  "OWI" for charges, verdicts, or convictions based on § 346.63(1)(a), which prohibits operating under the influence of a range of substances, including as most pertinent here controlled substances; "RCS" for those based on § 346.63(1)(am), which prohibits operating with "a detectable amount of a restricted controlled substance"; and "PAC" for those based on § 346.63(1)(b), which prohibits operating with "a prohibited alcohol concentration."

did not address any aspect of the RCS guilty verdict or dismissed count. *See id.*, ¶¶2, 38, 71.

¶4 Following remittitur, the State in effect asked the circuit court to do the following: reopen the judgment of conviction, which reflected a conviction on the OWI count and the dismissal of the RCS count; dismiss the OWI count and reinstate the RCS count; enter a conviction based on the RCS guilty verdict; and proceed to resentence McAdory, this time on the RCS count. McAdory objected, arguing that the court lacked authority to take these steps and that the court was in fact prohibited from taking them. McAdory also argued that this would violate the protections against double jeopardy. The court followed the course advocated by the State for reasons explained in written decisions, including a decision denying McAdory's motion for postconviction relief. McAdory appeals, raising the same arguments.

¶5 We conclude that the circuit court had authority to take, and was not barred from taking, these post-remittitur steps. We further conclude that McAdory does not have a double jeopardy claim on these facts. Accordingly, we affirm the order denying McAdory's motion for postconviction relief and affirm the amended judgment of conviction on the RCS count.

## BACKGROUND

¶6 The parties do not dispute any pertinent facts in this appeal. As we explained in the first appeal, the jury found McAdory guilty of both the OWI and the RCS charges at the only trial that has been held in this case, after the jury heard "evidence that a chemical test of a sample of his blood, drawn after he was arrested

following a traffic stop, showed the presence of cocaine and marijuana."[3]  *See McAdory*, 400 Wis. 2d 215, ¶1.

¶7     At the sentencing hearing following trial, the prosecutor moved to dismiss the RCS count on the ground that it duplicated the OWI count.  Defense counsel did not object, the trial court granted the motion, and the court proceeded to sentence McAdory on the OWI count.  The court's dismissal of the RCS count was reflected in the judgment of conviction that the court entered following sentencing.

¶8     Our prior opinion in *McAdory* addressed McAdory's two challenges to his conviction on the OWI count.  *Id.*, ¶¶2, 71.  We concluded that one argument had merit.  This was the argument that his due process rights were violated through a combination of factors that created a reasonable likelihood that the State was effectively relieved of its burden to prove all elements of the OWI count.  *Id.* Accordingly, we remanded the case to the circuit court for a new trial on the OWI charge.  *Id.*, ¶71.  We did not address the merits of the RCS count, nor did we make any reference to potential motions that either side might file in the circuit court following remittitur.

¶9     As already noted, following remittitur, the State moved the circuit court to reopen the judgment of conviction, convict and sentence McAdory on the

---

[3]  Presiding at trial was the Hon. John M. Wood ("the trial court").  After the remittitur that followed the first appeal in this case, the case was assigned to the Hon. Karl Hanson ("the circuit court").  In this appeal, McAdory challenges Judge Hanson's rulings only.

Separately, in addition to the OWI and RCS counts, McAdory was found guilty of obstructing an officer and entered a guilty plea to operating while revoked, but nothing about those charges is pertinent to this appeal.

RCS count, and dismiss the OWI count.[4]  McAdory opposed this motion and asked the circuit court to instead schedule a trial on the OWI count, "as ordered in the Court of Appeals decision."

¶10    The circuit court granted the State's motion.  The court reasoned that "McAdory had no expectation of finality" in the sentence he received on the OWI count following trial, as opposed to a new sentence on the RCS count following remittitur.  This was based on all of the following:  the jury found McAdory guilty on the RCS count; the only reason the RCS count was dismissed at sentencing was to comply with the single-conviction provision; and McAdory had successfully appealed, obtaining a reversal of the OWI count.  The court reached the general conclusion that "no mechanism of law" prevented reinstatement of the RCS count under these circumstances.  The court observed that the issue "may have been avoided if the State had elected for the sentence to be imposed on the RCS offense," but that McAdory was not "prejudiced in any way by reinstatement of the RCS conviction."

¶11    In this appeal, McAdory does not claim any error related to the trial of the RCS count, such as that the verdict on that count was ambiguous or otherwise defective.  He also does not raise any standalone argument challenging the sentence he received on the RCS count.  Instead, McAdory's challenges are limited to the

---

[4] Both the circuit court and McAdory appeared to have reasonably processed the State's post-remittitur motion as we characterize it in the text.  But we briefly note that some terminology used in the circuit court before and after the appeal in *State v. McAdory*, 2021 WI App 89, 400 Wis. 2d 215, 968 N.W.2d 770, could generate confusion.  Following the return of the verdicts at trial, the trial court purported to "enter judgment on" both the OWI and RCS counts, and in its decision challenged in this appeal the circuit court stated that McAdory "stood convicted of both an OWI offense and a RCS offense."  In a similar vein, the State asked the circuit court following remittitur to reinstate McAdory's "conviction" for the RCS count.  References like these miss the target, because the single-conviction provision barred both the trial court following trial and the circuit court following remittitur from entering more than one conviction based on multiple findings of guilt for WIS. STAT. § 346.63(1) charges.

circuit court entering a conviction on the RCS guilty verdict and proceeding to resentence him based on that conviction.

## DISCUSSION

¶12 The parties agree that we review all issues in this appeal under the de novo standard of review, applying well-settled standards, because each issue involves statutory or case law interpretation or determining the meaning and application of the constitutional protections against double jeopardy. *See Tietsworth v. Harley-Davidson, Inc.*, 2007 WI 97, ¶22, 303 Wis. 2d 94, 735 N.W.2d 418; *State v. Steinhardt*, 2017 WI 62, ¶11, 375 Wis. 2d 712, 896 N.W.2d 700.

### I. Circuit Court Authority to Reinstate the RCS Count and to Enter a Conviction for Purposes of Sentencing

¶13 Putting aside the double jeopardy argument addressed separately below, McAdory makes four arguments in support of his contention that the circuit court lacked authority to reinstate, or was barred from reinstating, the previously dismissed RCS count and entering a conviction for purposes of sentencing. We first explain our conclusion that the court's actions were proper because they were implicitly authorized by the single-conviction provision as it has been construed in related case law. Then we explain why we reject McAdory's four arguments to the contrary.

#### A. Implicit authorization of the single-conviction provision and case law

¶14 The single-conviction provision states in its entirety:

> (c) A person may be charged with and a prosecutor may proceed upon a complaint based upon a violation of any combination of par. (a), (am), or (b) [of WIS. STAT. § 346.63(1)] for acts arising out of the same incident or occurrence. If the person is charged with violating any combination of par. (a), (am), or (b), the offenses shall be

6

> joined. If the person is found guilty of any combination of par. (a), (am), or (b) for acts arising out of the same incident or occurrence, there shall be a single conviction for purposes of sentencing and for purposes of counting convictions under [Wis. Stat. §§] 343.30(1q) and 343.305. Paragraphs (a), (am), and (b) each require proof of a fact for conviction which the others do not require.

Sec. 346.63(1)(c). This establishes that, when a defendant "is found guilty of any combination of" § 346.63(1) offenses, as occurred here, the result should be "a single conviction for purposes of sentencing" and counting convictions. This has the effect of limiting the direction in Wis. Stat. § 972.13(1) that "[a] judgment of conviction shall be entered upon a verdict of guilty by the jury."

¶15 The somewhat sparse language of the single-conviction provision does not explicitly address the procedures to be used to accomplish the result of a single conviction, either generally or in the specific circumstances here. For example, as the circuit court noted in the decision challenged on appeal, the single-conviction provision does not refer to dismissal of counts.

¶16 But one statement in an opinion of this court fills in a key procedural aspect. In *Town of Menasha v. Bastian*, 178 Wis. 2d 191, 503 N.W.2d 382 (Ct. App. 1993), we interpreted the single-conviction provision to mean that "the defendant is to be sentenced on one of the charges, and the other charge is to be dismissed." *Id.* at 195. In this case that is what the prosecutor requested at the first sentencing hearing, in moving the trial court to dismiss the RCS count. It is also what the prosecutor requested post-remittitur, in moving the circuit court to dismiss the OWI count. While *Bastian* does not address the specific issue in this appeal, it establishes that, when there is more than one Wis. Stat. § 346.63(1) guilty verdict, only one can serve as the count for purposes of conviction and sentencing, and all

other § 346.63(1) counts are to be dismissed.[5] This has been a common practice. *See, e.g.*, ***State v. Foster***, 2014 WI 131, ¶14 n.3, 360 Wis. 2d 12, 856 N.W.2d 847 (noting that defendant was charged and found guilty of both OWI and PAC and that the circuit court dismissed the PAC charge at sentencing pursuant to the single-conviction provision); ***State v. Busch***, 217 Wis. 2d 429, 439-40, 576 N.W.2d 904 (1998) (noting that circuit court entered an order of judgment on a PAC charge and dismissed an OWI charge in accordance with the single-conviction provision).

¶17 Taking into account this dismiss-extra-counts feature of ***Bastian***, we conclude that the single conviction statute is not ambiguous for current purposes. "[A] statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶47, 271 Wis. 2d 633, 681 N.W.2d 110. "It is not enough that there is a disagreement about the statutory meaning; the test for ambiguity examines the language of the statute 'to determine whether "well-informed persons should have become confused," that is, whether the statutory ... language reasonably gives rise to different meanings.'" ***Id.*** (quoted source omitted, emphasis omitted). "'Statutory interpretation involves the ascertainment of meaning, not a search for ambiguity.'" ***Id.*** (quoted source omitted).

¶18 We address McAdory's specific arguments below. But none provides a reasonable interpretation of the single-conviction provision under which it precludes a circuit court from resolving the prosecution's post-remittitur motion

---

[5] In a footnote in his reply brief on appeal, McAdory suggests that the prosecutor here should have waited until after the remittitur following our release of the ***McAdory*** opinion before moving to dismiss either the OWI count or the RCS count. We do not think this is a reasonable interpretation of ***Town of Menasha v. Bastian***, 178 Wis. 2d 191, 503 N.W.2d 382 (Ct. App. 1993). That opinion strongly implies that dismissal is to occur no later than the sentencing hearing following the multiple adjudications of guilt. *See **id.*** at 195.

under the circumstances here. In contrast, we conclude that the only reasonable interpretation is that the single-conviction provision implicitly authorizes circuit courts, in the procedural posture here, to accomplish the intended goal of a single conviction in this way. Nothing in the language of the single-conviction provision prevents what the court did. Further, the court's actions accomplished the explicit purpose of the provision. This is to allow finders of fact to determine guilt on any charged OWI, RCS, or PAC count based on the same incident, while barring multiple convictions or punishments for the same incident. All the requirements of the single-conviction provision were met and nothing that the court did contradicts any aspect of the provision. Put differently, it would be unreasonable to interpret the single-conviction provision to mean, as McAdory contends, that the court's post-trial dismissal of the guilty verdict on the RCS count in order to satisfy the provision was necessarily permanent, regardless of subsequent events in the case.[6]

¶19 Our conclusion is informed in part by the fact that our legislature is presumed to enact statutes with knowledge of existing laws. *Heritage Farms, Inc. v. Markel Ins. Co.*, 2009 WI 27, ¶40, 316 Wis. 2d 47, 762 N.W.2d 652. With that presumption, in enacting the single-conviction provision the legislature is presumed to have been aware of the postconviction and appellate relief potentially available to defendants in criminal cases, specifically in the form of potential reversal of individual counts of conviction. *See* WIS. STAT. §§ 809.30, 974.02, 974.06.

---

[6] We do not rely on a related argument advanced by the State or the counterarguments on the same topic by McAdory. This involves the State's reliance on the "'inherent, implied and incidental powers'" that all circuit courts possess as necessary to allow them to accomplish their constitutional and statutory functions. *See State v. Henley*, 2010 WI 97, ¶73, 328 Wis. 2d 544, 787 N.W.2d 350 (quoted source omitted). We assume without deciding that this inherent authority does not provide justification for the circuit court's actions here. Instead, as explained in the text, we conclude that the court properly applied pertinent statutes, most centrally the single-conviction provision, and case law.

¶20   The legislature, in possession of that knowledge, could have anticipated the following scenario: a prosecutor pursues at trial some combination of OWI, RCS, and PAC charges based on a single incident and obtains guilty verdicts on multiple counts; as required by the single-conviction provision, the circuit court relies on only one conviction for purposes of sentencing and the other counts are dismissed; the defendant prevails in challenging that single conviction in a postconviction or appellate proceeding, but the dismissed count or counts are not affected by the reasoning of the postconviction or appellate court; and, following remittitur, the prosecutor moves to reinstate a dismissed count, with the result that the reinstated count serves as the single conviction for purposes of sentencing in lieu of the count that was reversed on appeal.[7]   Thus, this scenario could be anticipated by anyone with knowledge of the basic right to seek postconviction or appellate relief in the form of reversal of the conviction that has served as the single conviction in compliance with the single-conviction provision.   And despite this, the provision does not suggest that granting such a motion would be improper.

¶21   Our conclusion is also consistent with the observation of our supreme court, in the course of interpreting the single-conviction provision, that "it is evident that the legislature intended a *prosecution* under the facts set forth in this complaint *to terminate* with one conviction for all purposes."   *See* ***State v. Bohacheff***, 114

---

[7] McAdory does not argue that the prosecutor here was not free to select either of the two WIS. STAT. § 346.63(1) charges for its dismissal motion.   We do not address the rules that could apply to any disputes that could arise over the selection of a charge or charges for dismissal.

Wis. 2d 402, 413, 338 N.W.2d 466 (1983) (emphasis added).[8] The prosecution in this case has not terminated to this day, because McAdory has pursued this appeal. *See State v. Henley*, 2010 WI 97, ¶49, 328 Wis. 2d 544, 787 N.W.2d 350 (describing routes that defendant can pursue to attempt to obtain postconviction relief in a criminal case). The case certainly was not terminated with the release of our opinion in *McAdory*.[9]

¶22 We turn to McAdory's four counterarguments.

## B. The circuit court's post-remittitur authority in light of this court's opinion in *McAdory*

¶23 McAdory argues that, when the circuit court did not proceed with a new trial on the OWI charge following remittitur, it "exceeded its lawful authority"

---

[8] In *State v. Bohacheff*, 114 Wis. 2d 402, 338 N.W.2d 466 (1983), our supreme court interpreted the multi-count prosecution aspect of a single-conviction provision and determined that it does not violate the Double Jeopardy Clause. The court interpreted WIS. STAT. § 940.25(1)(c) (1981-82). That version of § 940.25 substantially differs from the current WIS. STAT. § 346.63. To cite one of numerous differences, the older statute has no reference to restricted controlled substances. But paragraph (1)(c) in each of these statutes contains the same "single conviction" feature, with the same basic function in each statute. No difference between § 940.25(1)(c) (1981-82) and the current version of § 346.63(1)(c) matters to our references to *Bohacheff*.

[9] To the extent that McAdory intends to argue that the concept of reinstating a charge or a conviction in a criminal case after it has been dismissed is foreign to Wisconsin law, our supreme court has used language to the contrary. For example, the mandate in *State v. Stevens*, 217 Wis. 2d 369, 369-70, 577 N.W.2d 335 (1998), states:

> [T]he cause is remanded to the circuit court with directions to conduct a new suppression hearing … ; if the evidence at the new suppression [hearing] satisfies the circuit court that reasonable suspicion existed to justify the no-knock entry accomplished in this case, *the circuit court should reinstate the defendant's judgment of conviction*.

(emphasis added); *see also Upchurch v. State*, 64 Wis. 2d 553, 564, 219 N.W.2d 363 (1974) ("We think this case should be sent back to determine the voluntariness of the statement; if the statement was made voluntarily by Upchurch, then *the conviction should be reinstated*. If the statement is found to be involuntary, then a new trial should be granted." (emphasis added)). The procedural postures of these cases differ from the posture here, but these references tacitly endorse the concept of reinstatement following dismissal.

by "disregard[ing]" the statement in our prior *McAdory* opinion that we were remanding for a new trial on the OWI charge. As part of this argument, McAdory asserts that the circuit court should have scheduled and presided over a second trial on the OWI count, regardless of the State's post-remittitur motion to dismiss that count and reinstate the RCS count. We reject this argument because the circuit court did not disregard or take any action inconsistent with any statement that we made or implied in *McAdory*, including the opinion's mandate, and the circuit court was not obligated to hold a second trial on the OWI count under these circumstances.

¶24 Our mandate in *McAdory* reversed the judgment of conviction on the OWI count and remanded the case to the circuit court. *See McAdory*, 400 Wis. 2d 215, mandate line following ¶71. We decided that a new trial on the OWI count would be the next step regarding that count. *Id.*, ¶¶2, 71. Of course, under the law of the case doctrine the parties could not relitigate the issues that were resolved in our opinion. *See Laatsch v. Derzon*, 2018 WI App 10, ¶40, 380 Wis. 2d 108, 908 N.W.2d 471 ("'[A] decision on a legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal.'" (alteration in *Laatsch*; quoted source omitted)). But our opinion had nothing to say regarding any motions that either side might file after remittitur. We certainly did not direct that the circuit court was obligated to schedule a trial on the OWI count even if, as would come to pass, the State moved to dismiss that count.

¶25 McAdory calls our attention to WIS. STAT. § 808.09, which governs the actions that an appellate court may take on appeal, and to WIS. STAT. § 808.08, which governs post-appeal proceedings in the circuit court following its receipt of the record and remittitur. But we see nothing in these provisions to support McAdory's argument. Consistent with § 808.09, this court in its prior *McAdory*

opinion issued a mandate reversing the challenged judgment on the OWI count and ordering a new trial on that count. Consistent with § 808.08, following remittitur the circuit took no action contrary to or in conflict with our mandate or with any concept expressed in or implied by our opinion. For this reason, it does not advance McAdory's argument for him to cite law that requires circuit courts to act consistently with an appellate court's "expressed or implied mandate." *See Tietsworth*, 303 Wis. 2d 94, ¶32.

### C. The single-conviction provision

¶26　McAdory may mean to suggest two alternative arguments purportedly tied to the single-conviction provision. One is his assertion that "nothing" in the single-conviction provision "authorized" the court's post-remittitur actions. We have addressed and rejected that concept above. The other argument appears to be that the single-conviction provision, as it has been interpreted in case law, barred the circuit court from granting the State's motion to essentially shift the single WIS. STAT. § 346.63(1) conviction in this case from the guilty verdict based on the OWI count to the guilty verdict based on the RCS count.

¶27　Before turning to this second argument, we note a theme woven through this section of McAdory's briefing. This is the suggestion that the circuit court's post-remittitur decisions improperly rescued the State from what McAdory calls the State's "crucial lapse in judgment" in deciding to move the trial court to dismiss the RCS count as opposed to the OWI count. It is fair to say, as we did in *McAdory*, that a different choice by the prosecution would have avoided that appeal. *See McAdory*, 400 Wis. 2d 215, ¶1 n.2. But in this appeal McAdory fails to develop an argument—at least one distinct from other arguments that we reject on other grounds—that the circuit court's post-remittitur actions were improper because the

State could have made a different choice at an earlier stage of the case that would have avoided subsequent litigation.

¶28 Turning to McAdory's second argument, this appears to boil down to the assertion that *Bastian* and *Bohacheff* establish that, if a court grants a prosecutor's motion to dismiss one WIS. STAT. § 346.63(1) count that has resulted in a finding of guilt, in order to comply with the single-conviction provision, that dismissal is "irreversible." In this section of his briefing McAdory fails to develop an argument that *Bastian* establishes this proposition, and we address separately below a more developed argument that McAdory makes based on *Bastian*.

¶29 What is left of this argument rests on the same passage from *Bohacheff* that we quote above. In this argument, McAdory emphasizes different words from the ones we italicize above. McAdory directs our attention to the phrase that we now italicize: "We are persuaded that when [the single-conviction provision] is read with an understanding of the nature of the [prohibition on multiple convictions], it is evident that the legislature intended a prosecution under the facts set forth in this complaint to terminate with one conviction *for all purposes*." *Bohacheff*, 114 Wis. 2d at 413 (emphasis added). McAdory's argument misinterprets the phrase "for all purposes." In his view, the phrase means "irreversible"—that is, forever, regardless of subsequent litigation in the same case. But when construed in context, the court actually used the phrase "for all purposes" to emphasize that defendants will not have multiple convictions on their records after the prosecution has been required by the single-conviction provision to rely on only one conviction. *See id.* Understood in this light, the court's use of the phrase "for all purposes" suggests nothing about subsequent events in the same case before it has been litigated to completion.

### D. The rules of postconviction and appellate procedure

¶30    McAdory makes a procedural argument based primarily on an analogy, citing *Henley*, 328 Wis. 2d 544, but we now explain why the analogy has no force.  In *Henley*, our supreme court clarified that convicted criminal defendants are generally limited to obtaining postconviction and appellate relief under WIS. STAT. §§ 974.02 and 974.06 and that they cannot challenge convictions using civil law vehicles such as WIS. STAT. §§ 805.15(1) and 806.07.  *Henley*, 328 Wis. 2d 544, ¶¶69-71.  McAdory argues that, just as the defendant in *Henley* could not rely on civil procedural statutes to challenge a conviction, the State here post-remittitur could not seek to reopen the judgment of conviction and reinstatement of the RCS count by relying on § 806.07 or any other civil statute.  But nothing like that occurred here.  *Henley* has nothing to say about a circuit court's authority in a criminal case to consider a post-remittitur motion by the State under these circumstances.

¶31    More broadly, McAdory argues that he must prevail in this appeal if the State cannot direct us to a specific postconviction or appellate statute that would allow the State to bring the post-remittitur motion it brought here.  Otherwise, he contends, the rule would be that the State is "allowed to obtain relief from a judgment of conviction whenever it please[s]," "an unlimited number of times[,] and for as long after the conviction as it desire[s]."  We have explained why we conclude that, under the circumstances here, the single-conviction provision implicitly authorizes a circuit court, after remittitur, to grant the State's motion to shift the single conviction from one charge to another.  We see no reason for concern that this interpretation of the single-conviction provision would open the door to allow prosecutors to revisit dismissed counts under other circumstances.  McAdory's hypothetical reference to "unlimited" prosecution motions might be

15

intended to evoke the specter of abusive or unfairly prejudicial prosecution practices, not present in this case, involving motions to dismiss or reinstate counts. But he gives us no reason for concern that circuit courts could not properly prevent potential abuses as they might arise in future cases.

### E. The State's possible forfeiture of its ability to move for reinstatement of the RCS count by failing to file a "protective appeal" in *McAdory*

¶32     McAdory argues that the State forfeited its ability to request reinstatement of the RCS count when it failed to—following trial and entry of the judgment of conviction on the OWI count—file a "protective appeal" addressing the RCS count.  McAdory bases this argument on *Bastian*.  We briefly summarize *Bastian* and then explain why we reject the argument.

¶33     As pertinent here, Bastian was ticketed by police, acting on behalf of a town, on both OWI and PAC charges.  *Bastian*, 178 Wis. 2d at 193.  A municipal court found him guilty on the OWI charge, but dismissed the PAC charge.  *Id.* at 193-94.  Bastian timely requested a trial de novo in the circuit court, seeking to challenge the OWI charge.  *Id.* at 194.  Even though the town did not appeal the dismissal of the PAC charge, the circuit court ruled that both charges would be tried to the jury.  *Id.*  The jury found Bastian guilty on the PAC charge, but acquitted him on the OWI charge.  *Id.*

¶34     Bastian appealed to this court the judgment on the PAC conviction. *Id.*  We reversed that judgment on the ground that the circuit court lacked "subject matter jurisdiction" over the PAC charge because the town had failed to file "a protective appeal" to the circuit court of the municipal court's dismissal of the PAC

charge. *Id.* at 196-97.[10] We reasoned that, because the municipal judge dismissed the PAC charge—in what we characterized as "the functional equivalent of an acquittal"—the PAC charge could not properly be prosecuted at the trial de novo in the absence of an appeal by the town to the circuit court. *Id.* "The town was aggrieved by the lack of a finding of guilt on the [PAC] charge" in municipal court, and therefore the town was obligated to appeal the dismissal in order to preserve its ability to pursue that charge. *Id.* We explained that the single-conviction provision did not apply because Bastian was not found guilty on the PAC charge. *Id.* at 195 ("If the defendant 'is *found guilty* of both [OWI and PAC] for acts arising out of the same incident or occurrence, there shall be a single conviction for purposes of sentencing.'" (quoting WIS. STAT. § 346.63(1)(c)) (emphasis in *Bastian*)).

¶35     McAdory argues that, like the town in *Bastian*, the State here should have filed a "protective" cross-appeal. But a critical difference is that the PAC charge in *Bastian* was dismissed without an adjudication of guilt, and here the RCS charge resulted in a guilty verdict. *See id.* at 195-96. McAdory asserts that this difference is "inconsequential," but he does not even attempt to support that assertion.

¶36     McAdory notes that WIS. STAT. § 809.10(2)(b), which addresses cross appeals, speaks in terms of a respondent's interest in "a modification of the

---

[10] Since *Bastian*, our supreme court has reaffirmed that Wisconsin circuit courts never lack "'subject matter jurisdiction to entertain actions of any nature whatsoever.'" *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶8, 273 Wis. 2d 76, 681 N.W.2d 190 (quoted source omitted). Therefore, this aspect of *Bastian* is not stated using proper legal standards. At the same time, however, a circuit court's failure to comply with statutory mandates may result in the court losing competency to exercise its subject matter jurisdiction. *Mikrut*, 273 Wis. 2d 76, ¶¶9, 34. Further, the State does not ask us to reject McAdory's *Bastian*-based argument because it purports to rest on a lack of subject matter jurisdiction, as opposed to implicitly speaking in terms of court competency. Accordingly, we assume without deciding that the aspects of *Bastian* on which McAdory now attempts to rely remain good law, despite its references to subject matter jurisdiction.

judgment or order appealed from or of another judgment or order entered in the same action or proceeding." But in the first appeal the State had no interest in modification of any judgment or order. The State's position was that the proceedings to date had been error-free. *See McAdory*, 400 Wis. 2d 215, ¶¶4, 38.

¶37 McAdory adds a brief alternative suggestion. The suggestion is that, short of filing an appeal or cross appeal, the State "[a]t the very least" "should have argued in its briefing" in the prior appeal in *McAdory* that this court should "vacate the dismissal of" the RCS charge "as an alternative ground on which to affirm the judgment of conviction." McAdory does not direct us to any authority requiring the State to have made that appellate argument to avoid forfeiture of its ability to file its post-remittitur motions in the circuit court. Putting aside the sufficiency of the evidence argument that we rejected in the prior appeal, the only relief then sought by McAdory was to request a new trial on the OWI charge. That is the topic that both parties addressed in their appellate briefing. Following the jury trial, and throughout the initial appeal until remittitur, the OWI count was locked in as the single conviction on a WIS. STAT. § 346.63(1) charge, pursuant to the single-conviction provision.

## II. Double Jeopardy

¶38 The Fifth Amendment provides in pertinent part, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. CONST. amend. V. Similarly, under the Wisconsin Constitution, "no person for the same offense may be put twice in jeopardy of punishment[.]" WIS. CONST. art. I, § 8, cl. 1. The two clauses are viewed as "'identical in scope and purpose.'" *State v. Schultz*, 2020 WI 24, ¶18, 390 Wis. 2d 570, 939 N.W.2d 519 (quoted source omitted). "Accordingly, United States Supreme Court decisions interpreting the

Fifth Amendment's Double Jeopardy Clause are 'controlling interpretations' of both the federal Constitution and the Wisconsin Constitution." *Id.* (quoted source omitted).

¶39    We conclude that McAdory has failed to identify how the events here, involving conviction and sentencing on a charge for which the jury returned a guilty verdict, could fit within any of the three categories of prohibited practices created by the Double Jeopardy Clause, as interpreted by the United States Supreme Court. *See North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 798 (1989); *State v. Lamar*, 2011 WI 50, ¶44, 334 Wis. 2d 536, 799 N.W.2d 758.  The three categories are:  "a second prosecution for the same offense after acquittal"; "a second prosecution for the same offense after conviction"; and "multiple punishments for the same offense." *Pearce*, 395 U.S. at 717 (footnotes omitted).

¶40    McAdory concedes on appeal that the third of these categories, prohibiting multiplicity, does not apply.  As for the other two, we conclude that he cannot show that either was violated.  This is because there was neither an acquittal nor a conviction on the RCS count before the circuit court's post-remittitur actions.  The first-time conviction and sentencing on the RSC count, which was entered upon the guilty verdict only following remittitur, resulted in no prejudice to McAdory.

¶41    Neither side presents us with a case that is on all fours with this one.  But we agree with the State that statements in *United States v. Wilson*, 420 U.S. 332 (1975), undermine McAdory's arguments.  In *Wilson*, after the jury returned a guilty verdict, the district court dismissed the indictment on the ground of prejudicial delay before indictment, and the government sought to appeal that ruling.  *Id.* at 333.  The Court rejected Wilson's double jeopardy challenge to that appeal on

19

the ground that such protection applies to government appeals only when there is a danger that the defendant will be subjected to a second trial for the same offense. *Id.* at 352-53.

¶42     Stated in terms of the reasoning in *Wilson*, McAdory essentially seeks to benefit from the due process violation on the OWI count at his trial by arguing that the single conviction must remain the OWI count even though the reinstatement of the RCS count does not subject him to a second trial. *See id.* at 345 ("[A] defendant has no legitimate claim to benefit from an error of law when that error could be corrected without subjecting him to a second trial before a second trier of fact."); *see also id.* at 344 (when "there is no threat of either multiple punishment or successive prosecutions, the Double Jeopardy Clause is not offended").

¶43     McAdory argues that he was improperly subject to jeopardy on the RCS charge twice because he was "at actual risk of being convicted" of that charge at trial and its dismissal at the first sentencing hearing "induced" him "to expect that he would not be further prosecuted or punished" on that charge. Therefore, he contends, once the State decided to dismiss that charge, he became entitled under double jeopardy principles to "the expectation of finality" in dismissal of the RCS charge. This argument based on expectation is not persuasive. McAdory fails to support the contention that he would have been justified, based on any reasonable interpretation of the double jeopardy doctrine, in thinking that dismissal of the RCS count at the first sentencing was, as he puts it, "irreversible," no matter the course of events in this case after he sought reversal of the OWI conviction.

¶44     In an appeal to extremes, McAdory asserts that, under the circuit court's reasoning, "the State could wait indefinitely long before asking the Circuit Court to 'reinstate' a charge," forcing defendants to live with "fear, worry, and

frustration about when, if ever, the State might suddenly decide to file its reinstatement motion." We do not purport to address all possible scenarios. Here, however, the prosecutor and the circuit court acted with reasonable expediency following remittitur. McAdory was or should have been aware, from before the time of trial, that he could be convicted and sentenced on only one WIS. STAT. § 346.63(1) charge, and that expectation has been met.

¶45 McAdory also argues that dismissal of the RCS charge at the first sentencing hearing "was with prejudice because jeopardy had attached" and "a decision on the merits had been made," and therefore double jeopardy protection prevented the State from "refiling" that charge. This argument rests on the false premise that the prosecutor here refiled the RCS charge. Refiling is the renewed commencement of a criminal prosecution. *See State v. Miller*, 2004 WI App 117, 274 Wis. 2d 471, 683 N.W.2d 485 (addressing various issues in the context of dismissal and refiling of criminal charges); *State v. Braunsdorf*, 98 Wis. 2d 569, 297 N.W.2d 808 (1980) (addressing the limited authority of circuit courts to dismiss criminal cases "with prejudice," preventing refiling, before jeopardy has attached). Here in contrast, as we have discussed, the prosecution moved the circuit court to reinstate a count upon which a guilty verdict had been returned. With that understanding, McAdory fails to explain why his double jeopardy rights protected him from reinstatement of the RCS count based on any notion of dismissal with prejudice. Assuming that dismissal of the RCS count was with prejudice—meaning that the State could not refile the RCS charge—in fact, the prosecution did not refile the RCS charge. McAdory fails to develop a double jeopardy argument that fits the facts of this case based on dismissal-with-prejudice principles.

¶46 In sum, McAdory had one trial on the RCS count, the jury unanimously found him guilty on that charge, and he is not exposed to the risk of

being subjected to a new trial. He was convicted and sentenced on the RCS count for the first time after remittitur, at which time the OWI count was dismissed. Therefore, double jeopardy protection does not present a bar.

## CONCLUSION

¶47    For all these reasons, we affirm the judgments and the denial of the postconviction motion.

*By the Court*.—Judgments and order affirmed.